IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
01 AUG -8 AM 10: 32
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
AUG - 8 2001

| | |
|---|---|
| KENNEY KING, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. CV-99-TMP-1140-S |
| ) | |
| BILLY MITCHEM, Warden, and the ) | |
| ATTORNEY GENERAL OF THE STATE ) | |
| OF ALABAMA, ) | |
| ) | |
| Respondents. ) | |

### MEMORANDUM OPINION

This case was re-assigned to the undersigned following the filing of a report and recommendation by the magistrate judge, recommending that the petition for writ of habeas corpus be granted. Petitioner filed his *unsigned* objections to the report and recommendation on August 1, 2001, as did the respondents. Petitioner's appointed attorney has not filed any objections to the report and recommendation. Because the objections filed by the petitioner are *unsigned*, they are due to be stricken.

The objections raised by the respondents raise two essential points: first, that § 2254(b)(3) of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") prevents their failure to plead a procedural default defense from being treated as a waiver of the defense, as the magistrate judge concluded; and, second, that there was no ineffective assistance of appellate counsel warranting the granting of habeas relief. Both of these

36

contentions are due to be rejected, and the magistrate judge's report and recommendation, slightly modified as set out below, is due to be adopted and accepted.

Respondents' first objection is grounded on a particular provision of AEDPA, enacted in 1996. They argue that § 2254(b)(3), which requires an *explicit* waiver of the exhaustion requirement, also must be read as requiring an explicit waiver of any procedural default that may be available as a defense for the respondents and that a waiver of procedural default cannot be implied from the respondents' failure to plead it in their answer. Section 2254(b) (3) reads simply:

> A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

Nothing in its express language refers to the exhaustion requirement's "handmaiden,"[1] the doctrine of procedural default. Unquestionably, exhaustion of state remedies and the procedural default doctrine are closely related; indeed, procedural default is the manner in which the exhaustion requirement is enforced. They, nonetheless, remain fundamentally different. An unexhausted claim is one for which a state judicial remedy continues to exist and which has not be utilized by the petitioner. A procedurally defaulted claim, on the other hand, no longer has any state judicial remedy available for its consideration; procedurally

---

[1] "The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine. If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." Smith v. Jones, ___ F.3d ___, 2001 WL 769600 (11th Cir. 2001).

2

defaulted claims are, by definition, exhausted simply because there is no state remedy remaining for consideration of them. Thus, one must not confuse the exhaustion requirement with procedural default merely because they are so closely related.

Keeping in mind that § 2254(b)(3) refers explicitly only to the exhaustion requirement, the issue becomes whether the court should construe the section to require also the explicit waiver of procedural defaults. Stated another way, has § 2254(b)(3) statutorily overruled Eleventh Circuit precedent holding that procedural defaults can be waived either explicitly or implicitly by failing to plead them? See Esslinger v. Davis, 44 F.3d 1515, 1524 n. 32 (11th Cir. 1995) ("The state can waive a procedural bar to relief by explicitly waiving, or by merely failing to assert, the bar in its answer to the habeas petition.").

The court does not believe it can be read that way; rather, § 2254(b)(3) is concerned only with the exhaustion requirement, not procedural defaults. The essential differences between them underlie the policy differences that direct the court to limit the effect of § 2254(b)(3) only to the exhaustion requirement. A strict adherence to the exhaustion requirement does not necessarily preclude a petitioner from obtaining a remedy. Indeed, requiring him to exhaust his state remedies assures that petitioners will receive the most orderly and thorough consideration of their claims. For that reason, a rule that precludes an implicit waiver of the exhaustion requirement does nothing more than require a federal habeas court to direct a petitioner to the correct state court to exhaust his remedy. A procedural default, on the other hand, is the end of the line. The *sua sponte* invocation of

a procedural default by the court (not plead by the respondents) bars consideration of the defaulted claim unless the petitioner can carry the onerous burden of proving "cause and prejudice" or actual innocence to excuse the default. Fairness to the petitioner dictates that he be given notice of the defaults he is required to rebut, and that notice comes from the defaults being pled by the respondents. Unless the respondents plead a default, petitioner should not be subjected to having his claim rejected because the court later recognizes a procedural default either not recognized or deliberately waived by the State.

Additionally, the burdens of proof applicable to procedural default and exhaustion are different. Exhaustion simply requires the respondents (or the court) to point out a state remedy still available to the petitioner. The invocation of a procedural default, however, places the burden on the respondents at some point to prove the adequacy, fairness, and regularity of the remedy the petitioner defaulted. A petitioner's failure to follow a state procedural rule will not be a default unless that rule is "independent and adequate" and it is regularly followed by the state courts. Those issues are precisely the sort that can be contested once the respondents have pled a particular default, and the need to address them underlies the reason for requiring the defaults to be pled. Unless pled by the respondents, the issue of the adequacy and regularity of the remedy defaulted cannot be raised by the petitioner. Consequently, it is fair to deem unpled defaults as waived.

The respondents' citation to the Sixth Circuit case of <u>Rockwell v. Yukins</u>, 217 F.3d 421 (6th Cir. 2000), is not helpful to them. <u>Rockwell</u> deals only with the dismissal of a

"mixed" petition containing an unexhausted claim. It does not state the proposition that § 2254(b)(3) requires an explicit waiver of procedural defaults, as the statute does for exhaustion, or that failure to plead a procedural default should not be treated as a waiver of the default by the respondents. In any event, Eleventh Circuit precedent is found in Esslinger, specifically holding that failure to plead a default is a waiver of it, except in very limited circumstances not applicable here.[2] Thus, the court agrees with the magistrate judge that the failure of the respondents to amend their answer to the habeas petition to assert the failure of the petitioner to seek certiorari from the Alabama Supreme Court as a procedural default was waived.

The court also agrees with the magistrate judge that the evidence presented at the hearing conducted by him established ineffective assistance of counsel with respect to pursuing a motion for new trial. Without repeating the findings of fact made by the magistrate judge (with regard to which the court has conducted a *de novo* review), it is clear that counsel was presented with information that the victim and only eye-witness to the robbery petitioner was convicted of had recanted her trial testimony, yet counsel did nothing to attempt to amend his motion for new trial to raise the recantation as a basis for a new trial. He did not seek further information from his own client; he did not attempt to find the victim to see if she had, in fact, recanted; he did not file a protective motion for new trial to stop

---

[2] Esslinger leaves open the possibility that a court may *sua sponte* recognize a procedural default not pled by the State, but only when there is an important federal interest in doing so. There are no such interests in this case, so the general rule of waiver applies.

the running of the time for filing a post-trial motion until he could more thoroughly investigate the claim of recantation. Counsel admitted during the evidentiary hearing that he did nothing but wait to see if the victim's affidavit would appear. This is essentially no representation at all.

The court disagrees slightly with the magistrate judge concerning the scope of the prejudice suffered due to the professionally unreasonable conduct of counsel, and the scope of the habeas remedy necessary to correct it. The magistrate judge recommended that the writ be granted unless petitioner is given a new trial. The court believes that the correct remedy is to grant the writ unless petitioner is given an adequate opportunity to present the state court with his motion for new trial addressed to the possible recantation of the victim. It is certainly true that counsel's failure caused petitioner to lose the opportunity to argue for a new trial based on the victim's recantation. Whether a new trial would have been granted, had the motion been presented and argued, is a different matter. It is entirely possible that the state courts would have rejected the recantation as a justification for a new trial. What was lost was not the assurance of a new trial, but the opportunity to seek one. Thus, the court believes the writ of habeas corpus should be granted conditionally, unless the Alabama state courts afford petitioner an opportunity, with the constitutionally effective assistance of counsel, to file and be heard on a motion for new trial grounded on the assertion that the victim has now recanted her trial testimony. If he is afforded such an opportunity, the writ will become moot; if not, it will issue, vacating his conviction.

A separate order will be entered.

DONE this the ___8th___ day of August, 2001.

_____
WILLIAM M. ACKER, JR.
SENIOR UNITED STATE DISTRICT JUDGE